UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GERARDO ROSARIO,

      Plaintiff,

v.                                Case No. 6:10-cv-353-Orl-36KRS

BILLY BLAKELY, et al.,

      Defendants.

_____

## ORDER

This case is before the Court on Defendant Marc Awobuluyi's Motion to Dismiss (Doc. No. 129) and Defendants Kendrick Armstrong, Bruce Douglas, Mary Martinez, Edwin Pont, Sandra Roberts, and Richard Wheatley's Motion for Summary Judgment (Doc. No. 150). Plaintiff filed a Response in Opposition to the Motion to Dismiss (Doc. No. 135), a Response in Opposition to the Motion for Summary Judgment (Doc. No. 167), and affidavits in support (Doc. Nos. 168-173). As discussed hereinafter, Defendant Awobuluyi's Motion to Dismiss and Defendants Armstrong, Douglas, Martinez, Pont, Roberts, and Wheatley's Motion for Summary Judgment will be granted.

## I.    *Factual Background*[1]

Plaintiff, a prisoner of the State of Florida proceeding *pro se*, filed this action

_____

[1] In considering the motion for summary judgment, the statement of facts is derived from the second amended complaint, affidavits, and other evidence submitted by Plaintiff and Defendants in support of, or in opposition to, the dispositive motion. The motion to dismiss is considered in light of the allegations of the second amended complaint and other documents filed in relation to the issue of exhaustion.

pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights by denying him medical care.[2]  (Doc. No. 39 at 10.)   Plaintiff further alleges a state law claim for medical negligence.  *Id.*

On August 23, 2007, Plaintiff was a pretrial detainee in the Orange County Jail.  *Id.* On that date at approximately 10:00 a.m., Plaintiff's right leg was injured when Defendant Smith forced Plaintiff to the floor and landed on top of him.  *Id.*  Plaintiff immediately began to scream in pain that his leg was broken.  *Id.*  Plaintiff was taken to his cell in a wheelchair.  (Doc. No. 169 at 2.)

Defendant Sandra Roberts, a nurse practitioner, examined Plaintiff immediately after the incident and determined that his leg was not broken because he had a normal range of motion.  (Roberts Aff. 2.)  As a precaution, however, an x-ray was ordered, and Plaintiff was given Motrin to reduce pain and inflammation.  (Roberts Aff. 2.)  Defendant Mary Martinez, a registered nurse, also briefly examined Plaintiff at that time and deferred to Defendant Roberts' assessment because Defendant Roberts was the advanced registered nurse practitioner.  (Martinez Aff. 2.)

In August 2007, x-rays of Orange County Jail inmates were performed by Mobilex, a private company.  (Roberts Aff. at 3.)  Mobilex took an x-ray of Petitioner's right leg on August 23, 2007.  *Id.*  The x-rays were not given to the Orange County Jail.  *Id.*  Instead, a radiologist, Defendant Awobuyuli, employed by Mobilex, reviewed the x-ray and gave the

---

[2]Plaintiff also alleged claims for excessive force and assault and battery against other Defendants.  However, those claims were addressed in a prior Order (Doc. No. 126) and will not be addressed herein.

Orange County Jail medical staff a written report. *Id.* Defendant Awobuyuli's report, which was placed in Plaintiff's medical file, stated that "no fracture or dislocation" was observed but there was "moderate osteoarthritis of the right hip with slight flattening of the femoral head." (Aug. 23, 2007, X-Ray Report.)

Defendant Roberts relied on Defendant Awobuyuli's report in her medical treatment of Plaintiff. (Roberts Aff. 3.) Given her assessment of Plaintiff, coupled with the x-ray report, Defendant Roberts prescribed Plaintiff Robaxin, a muscle relaxer, and Motrin, an analgesic for pain and inflammation. *Id.* Defendant Roberts believed that Plaintiff's leg was not broken but instead that Plaintiff's pain was muscular or arthritic in nature. *Id.* at 4.

Defendant Wheatley, a registered nurse, saw Plaintiff four times on August 23-24, 2007, and one time on August 25, 2007. (Wheatley Aff. 2.) In contradiction to Plaintiff's attestations, Defendant Wheatley attested that Plaintiff did not complain at any time that he was in pain, advise him that his leg was broken, or request additional treatment. *Id.*; *see also* Doc. No. 168 at 2. Regardless, Defendant Wheatley attested that he had no authority to prescribe medication nor was he involved in any decisions regarding x-rays for Plaintiff. *Id.* at 3.

Defendant Armstrong, a registered nurse, examined Plaintiff on August 24, 2007, at which time Plaintiff complained of pain and had difficulty moving his right lower extremity. (Armstrong Aff. 2.) Defendant Armstrong notified Defendant Roberts of his observations, and as a result, Defendant Roberts prescribed Robaxin and Motrin for

3

Plaintiff.  *Id.*

Defendant Armstrong examined Plaintiff for several days following the incident, and Plaintiff continued to complain of soreness in his right leg.  *Id.*  Likewise, Defendant Martinez saw Plaintiff on September 1, 2007, at which time she noted that he walked to the door by leaning on a bedside table.  (Martinez Aff. 3.)  Defendant Martinez also saw Plaintiff on September 15, 2007, but she and Plaintiff dispute whether Plaintiff voiced any complaints at that time.  *Id*; *see also* Doc. No. 170 at 3.  Defendant Martinez, as well as, Defendant Armstrong attested that they had no authority to prescribe medication or to order x-rays for patients.  (Martinez Aff at 4; Armstrong Aff. 3.)

Defendant Armstrong examined Plaintiff along with Defendant Douglas on September 18, 2007, at which time Plaintiff continued to complain of right leg pain. (Armstrong Aff. 2.)  At that time, Defendant Douglas, a nurse practitioner who had also evaluated Plaintiff on August 25, 2007, and was aware of the August 23, 2007 x-ray report, ordered additional x-rays be taken of Plaintiff's leg.  (Douglas Aff. 4.)

Mobilex took an x-ray of Petitioner's right leg on September 18, 2007. (Armstrong Aff. 3.)  Defendant Jason Liu, a radiologist employed by Mobilex, reviewed the x-ray and gave the Orange County Jail medical staff a written report on September 20, 2007.  (Sept. 18, 2007, X-Ray Report.) Defendant Liu's report, which was placed in Plaintiff's medical file, indicated that Plaintiff had an "acute right acetabular fracture."  *Id.*  Plaintiff was provided crutches and instructed not to place weight on his right leg.  (Armstrong Aff. 3.) Defendant Awobuluyi modified Plaintiff's initial x-ray report on October 8, 2007, to reflect

4

that "the right acetabular roof fracture is new since 08-23-07." (Aug. 23, 2007 X-Ray Report.)

Defendant Edwin Pont, the medical director for the Orange County Jail, never personally examined Plaintiff. (Pont Aff. 2.) Defendant Pont attested that Defendants would have relied on x-ray reports provided by Mobilex radiologists in directing medical treatment for Plaintiff. *Id*. at 2-3.

On September 20, 2007, Defendant Douglas referred Plaintiff to an orthopaedist. (Pl. Medical Records.) On September 26, 2007, an orthopaedist recommended a CT scan. (Doc. No. 173-1 at 14.) Thereafter, on October 2, 2007, Plaintiff underwent surgery. (Pl. Medical Records.)

## II.   *Legal Standards*

### A.   *Summary Judgment*

"Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010) (citing Fed. R. Civ. P. 56). At this stage of the proceedings, "the evidence and all reasonable inferences from that evidence are viewed in the light most favorable to the nonmovant, but those inferences are drawn 'only 'to the extent supportable by the record.'" *Id*. (quoting *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010). The burden of establishing that there is no genuine issue of material fact lies on the moving party, and it is a stringent one. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

5

Rule 56(c)(1) provides as follows:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

The nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If, after the movant makes its showing, the nonmoving party brings forth evidence in support of its position on an issue for which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

B.     *Motion to Dismiss*

When considering a motion to dismiss pursuant to Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff and its allegations are taken as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corporation S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). A complaint must contain a short and plain statement demonstrating an entitlement to relief, and the statement must "give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

Previously, the standard provided that a complaint should not be dismissed for failure to state a claim unless it appeared beyond doubt that plaintiff could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, this standard has been "retired" in favor of a heightened requirement that the plaintiff supply "'enough facts to state a claim to relief that is plausible on its face,' rather than merely 'conceivable.'" *Huggins v. Marriott Ownership Resorts, Inc.*, No. 6:07-cv-1514-Orl-22KRS, 2008 WL 552590, at *2 (M.D. Fla. Feb. 27, 2008) (quoting *Twombly*, 550 U.S. at 563, 570); *see also Lewis v. Seneff*, 654 F. Supp. 2d 1349, 1354 (M.D. Fla. 2009). Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

7

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id*.

Dismissal is also warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there remains a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992). Moreover, in the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

## III.    *Analysis*

Defendants Armstrong, Douglas, Martinez, Pont, Roberts, and Wheatley contend that they are entitled to summary judgment because (1) Plaintiff failed to exhaust his administrative remedies, (2) they are entitled to qualified immunity, and (3) Defendant Pont is not liable in his supervisory capacity. Similarly, Defendant Awobuluyi maintains that Plaintiff's claims should be dismissed because (1) Plaintiff failed to exhaust his administrative remedies, (2) Plaintiff's state law claim for medical malpractice/negligence is barred by the statute of limitations, (3) Plaintiff fails to sufficiently allege that he was deliberately indifferent to Plaintiff's medical needs, and (4) he is entitled to qualified immunity. The Court will address Defendants' arguments in turn.

### A.    *Exhaustion*

Defendants contend that Plaintiff's claims are subject to dismissal because he did not exhaust his administrative remedies.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies before pursuing a civil rights action:

> **(a)**     **Applicability of administrative remedies**
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court of the United States has held that § 1997e's exhaustion requirement requires "'proper exhaustion,'" such that "a prisoner must exhaust all prescribed administrative remedies available to him . . . before filing a lawsuit to seek judicial redress." *Garcia v. Glover*, 197 F. App'x 866, 868 (11th Cir. 2006) (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)).  The Supreme Court has repeatedly held that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 918-19 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).  To determine whether a plaintiff has exhausted his administrative remedies, courts do "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted." *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998)).

The Eleventh Circuit has held:

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for

summary judgment."

*Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)). Therefore, Defendant Awobuluyi has properly raised the exhaustion defense in his motion to dismiss, and the remaining Defendants' argument will be considered in this context. *See id.* at 1375.

"When motions to dismiss are based on issues not enumerated under Rule 12(b), such as here, then Federal Rule of Civil Procedure 43(c) governs and 'permits courts to hear evidence outside of the record on affidavits submitted by the parties.'" *Brown v. Darr*, 2010 WL 1416552, at *3  (M.D. Ga. 2010) (quoting *Bryant*, 530 F.3d at 1377 n. 16).  Accordingly, "the parties may submit documentary evidence concerning the exhaustion issue and doing so will not require the conversion of the motion to dismiss into a summary judgment motion." *Id.* "In addition, the judge may resolve factual questions concerning a plaintiff's alleged failure to exhaust nonjudicial remedies, 'so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.'" *Id.* (quoting *Bryant*, 530 F.3d at 1376) (footnote omitted).

To determine whether a complaint should be dismissed for failure to exhaust administrative remedies, the court must first consider the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court must take the plaintiff's version of the facts as true. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). '"If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.'" *Id.*  If the

10

court determines that the complaint is not subject to dismissal considering the plaintiff's factual allegations to be true, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*. "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies.  Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*.

As noted in this Court's March 9, 2012, Order, in the second amended complaint, Plaintiff admitted that there is a grievance procedure at the Orange County Jail and that he did not file any grievance in accordance with that procedure.  (Doc. No. 39 at 4.)  In explanation for his failure to do so, Plaintiff asserted that he "was prevented[,] . . . not allowed, allowed [sic] an ink pen at the jail, then . . . was later transferred to a hospital for weeks.  By the time [he] was returned to the jail the time for filing grievances had expired." *Id*.  Additionally, Plaintiff alleged that the staff at the Orange County Jail repeatedly denied his requests for writing supplies and that "the Defendant whom used excessive force against him were [sic] putting pressure on him and monitoring everything . . . [he] did in regards to complaining about pain, lack of treatment and the excessive force used against him."  (Doc. No. 118 at 8.)

This Court previously ruled that Plaintiff had not established "that the administrative remedy was not available to him based on a threat of retaliation" nor had he "shown that his transfer approximately a month after the initial incident rendered the

11

Jail's administrative remedy unavailable." (Doc. No. 126 at 14.) Nevertheless, the Court determined that a question existed as to whether the grievance procedure was available to Plaintiff in light of his contention that the Jail staff refused to provide him with writing materials. *Id.* at 15. The Court indicated that Defendants could offer evidence to refute Plaintiff's contention in a motion for summary judgment if they chose. *Id.* at 15 n.4.

The Court has determined that the factual allegations do not conflict. Plaintiff admits that there is a grievance procedure and that he did not file any grievance regarding these incidents. Thus, the issue that remains is whether Plaintiff's alleged deprivation of writing materials served to make the administrative remedies at the Orange County Jail unavailable to him.

Defendants contend that the evidence refutes Plaintiff's contention that he was unable to exhaust his administrative remedies because he was denied writing materials. In support of their argument, Defendants have filed a Request for Administrative Remedy form completed by Plaintiff on September 25, 2007, wherein he complained that the chaplain had not answered his request. (Doc. No. 151-1.) Further, to show that he had access to writing materials, Defendants have filed a copy of the Orange County Jail's policies and procedures concerning the commissary and Plaintiff's inmate account statement from the relevant time period. (Doc. Nos. 151-2, 151-4.) Finally, Defendants filed a copy of a notice of intent to sue letter and public records request, which Plaintiff signed on October 3, 2007, that was sent to the Orange County Jail by Plaintiff's attorney. (Doc. No. 151-3.)

The Eleventh Circuit has held "[w]hen a prisoner alleges that he did not have timely access to the required grievance forms, he still fails to exhaust his administrative remedies if he does not request consideration of an untimely grievance." *Schlicher v. Fl. Dep't of Corr.*, 399 F. App'x 538, 539, (11th Cir. 2010) (citing *Bryant*, 530 F.3d at 1373). In *Dotson v. Allen*, 2006 WL 2945967, *3 (S.D. Ga. 2006), the court considered whether the plaintiff's contention that prison officials refused to send him appeal forms upon request was sufficient to survive a motion to dismiss for failure to exhaust administrative remedies. The *Dotson* court held:

> If, in fact, prison officials refused to provide Plaintiff with an appeal form, then the Court cannot dismiss Plaintiff's action based on Defendants' contentions that Plaintiff failed to appeal and exhaust. The Plaintiff argues that his failure to exhaust was a direct result of actions of prison officials. If the evidence shows that Plaintiff's requests for the forms were indeed refused, Plaintiff would have indeed exhausted all of his "available" administrative remedies, as he would no longer have had "the possibility of some relief for the action complained of." *See Booth*, 532 U.S. at 738, 121 S. Ct. at 1824. If prison officials refuse to facilitate the grievance procedure, then the grievance procedure cannot truly be "available" to the inmate within the meaning of the PLRA's exhaustion requirement.

*Id.* at *3.

Review of the evidence submitted by Defendants refutes Plaintiff's contention that he could not exhaust his administrative remedies because he was denied writing materials. First, the Court notes that Plaintiff was able to purchase such items through the commissary. In fact, Plaintiff made numerous purchases from the commissary from August 23, 2007, through October 17, 2007, prior to and after the use of force and his surgery. (Doc. No. 151-4.) More importantly, the evidence demonstrates that Plaintiff

13

actually was able to complete a Request for Administrative Remedy form on September 25, 2007, shortly after it was discovered that Plaintiff's right leg was fractured and before he underwent surgery.  Additionally, one day after his surgery, Plaintiff was able to sign a public records request.[3]  Despite his clear ability to complete administrative forms, at no point either before or after his surgery, did Plaintiff file a grievance with the Orange County Jail related to either the use of force or his medical care.  Accordingly, the Court concludes that Petitioner failed to exhaust the available administrative remedies.

### B.    *Qualified Immunity*

Alternatively, Defendants Roberts, Wheatley, Martinez, Douglas, Armstrong, and Pont assert that they are entitled to summary judgment on Plaintiff's claims against them in their individual capacity based on the doctrine of qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (citation omitted) (quotation omitted).  To be entitled to qualified immunity, a government official first must demonstrate that "he was acting within the

---

[3]This Court's previous determinations that Plaintiff failed to demonstrate that the administrative remedy was not available to him based on a threat of retaliation and his transfer approximately a month after the initial incident are further supported by the evidence that Plaintiff submitted a Request for Administrative Remedy and notified the Orange County Jail of his intent to sue.  It is hard to conceive that Plaintiff would have felt safe enough to notify the Orange County Jail he intended to sue based on the use of force and denial of medical care but yet felt pressured or threatened not to file a grievance as to the incidents.

scope of his discretionary authority when the allegedly wrongful acts occurred." *Rich v. Dollar,* 841 F.2d 1558, 1563-64 (11th Cir. 1988) (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir. 1983)). If the defendant satisfies this burden, then the Court must grant qualified immunity unless the plaintiff can demonstrate first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officers; and, second, that it was clearly established at the time of the incident that the actions of the defendant were unconstitutional. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001)*; see also McCullough v. Antolini,* 559 F.3d 1201, 1205 (11th Cir. 2009). Courts are permitted to exercise discretion in determining which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson*, 555 U.S. at 236.

In the instant case, it is clear that Defendants were acting in the scope of their discretionary authority during the course of the alleged violations. Plaintiff has not argued otherwise. Accordingly, the Court will first consider whether Plaintiff has demonstrated a constitutional violation by Defendants Roberts, Wheatley, Martinez, Douglas, Armstrong, and Pont.

To demonstrate deliberate indifference to a serious medical need, a plaintiff must establish "(1) the defendant's subjective knowledge of the risk of serious harm; (2) the defendant's disregard of that risk; and (3) that the defendant's conduct rose to more than mere negligence." *Jackson v. Jackson*, 2012 WL 265585, *1 (11th Cir. 2012) (citing *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003)). "A medical need may be considered serious if

15

a delay in treating it makes it worse." *Id*. (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009)). "For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness .'" *Id*. (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)). "A delay in providing medical treatment can constitute deliberate indifference." *Lepper v. Nguyen*, 368 F. App'x 35, 39 (11th Cir. 2010) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). "However, '[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.'" *Id*. at 39-40 (quoting *Townsend v. Jefferson County*, 582 F.3d 1252, 1259 (11th Cir. 2009)).

Plaintiff alleges that he was examined or treated by Defendants Roberts, Wheatley, Martinez, Douglas, Kendrick, Armstrong, and Pont at various times. Plaintiff asserts that he was not provided any pain medication until approximately four hours after the initial incident. He further states that an x-ray was taken of his leg, but Defendants Awobuluyi and Pont opined that no fracture or dislocation was observed. He further contends that he complained to all medical staff he saw that he was in severe pain but they did nothing. Plaintiff alleges that despite his representations that he was in severe pain, on August 25, 2007, Defendant Armstrong did not provide him pain medication and Defendant Douglas expressed his belief that Plaintiff was being treated unnecessarily. Moreover, Defendant Roberts encouraged Plaintiff to exercise on August 30, 2007, and Defendants Armstrong

16

and Douglas waited until September 18, 2007, to order another x-ray, which showed that

Plaintiff suffered a fracture between his pelvis and hip bone, requiring surgery.  According

to Plaintiff, a doctor told him that because of the delay and Plaintiff being forced to put

pressure on his leg, the injury was worse than when it occurred, and if he had been brought

in sooner, he probably would not have needed surgery and would have had a good chance

of full recovery without permanent damage.

The evidence before the Court establishes that Defendants Martinez, Wheatley, and

Armstrong, all of whom are registered nurses, had no authority to prescribe medication or

order x-rays.  Instead, Defendants Martinez, Wheatley, and Armstrong followed the

directives of their supervisors regarding the care and medication Plaintiff was to receive.

Plaintiff has not alleged that these Defendants refused to provide him with any medical

care, refused to give him the treatment directed by their supervisors, or failed to

communicate his complaints to their supervisors.  Courts have held that nurses who are

not empowered to take action contrary to a doctor's orders do not violate a prisoner's

constitutional rights by failing to alleviate the prisoner's pain.  *See, e.g., Thayer v. Adams*, 364

F. App'x 883, 891 (5th Cir. 2010); *Blacker v. Desmarias*, No. 1:09-cv-346, 2010 WL 2710959, *2-

3 (S.D. Ohio July 7, 2010) (granting summary judgment on claim of deliberate indifference

to serious medical need where the health care administrator did not make decision to

discontinue the prisoner's medication and lacked the authority to do so).

Furthermore, Plaintiff received medical evaluations and treatment consistent with

the medical judgment that he suffered from either arthritis or a muscle injury.  This medical

17

judgment was based on Dr. Roberts' assessment of Plaintiff's leg, coupled with the first x-ray report, indicating no fracture was observed but moderate osteoarthritis was noted.[4] Shortly after the incident, Defendant Roberts prescribed Plaintiff Motrin for the pain and later added a prescription for Robaxin to relax the muscles.

The medical records reflect that Plaintiff was seen by Defendants Roberts, Wheatley, and Martinez at various times on August 23. Thereafter, Plaintiff was seen by Defendant Armstrong on August 24 and by Defendant Douglas on August 25, 2007, and Defendant Douglas prescribed additional Motrin and Robaxin on August 25, 2007. Defendant Roberts examined Plaintiff on August 27 and 30, 2007, and continued the Motrin and Robaxin prescription. The medical records further reflect that on August 30, 2007, Defendant Roberts advised Plaintiff that his x-ray report was negative and encouraged him to exercise the leg but still prescribed pain medication and a muscle relaxer. Defendant Roberts examined Plaintiff on September 4, 2007, and again prescribed Robaxin. Thereafter, Plaintiff was seen by Defendants Roberts, Armstrong, and Martinez approximately seven times from September 6-17, 2007. On September 18, 2007, Defendant Douglas ordered a second x-ray and prescribed Plaintiff Naproxen and Robaxin.

When the second x-ray report was received on September 20, 2007, indicating a right acetabular fracture, Defendant Douglas advised Defendant Pont of the report, and an orthopaedic evaluation was requested. Thereafter, Plaintiff was examined by an

---

[4]The Court notes that there is no evidence that the x-ray report was fabricated in order to conceal or cover-up the use of force. Furthermore, there is no evidence that any of the Defendants other than Defendants Awobuluyi and Liu ever saw the actual x-rays.

orthopaedist on September 26, 2007, and underwent surgery on October 2, 2007.

Defendants' examinations and treatment of Plaintiff from August 23, 2007, through September 18, 2007, as documented in Plaintiff's medical records, were consistent with the initial x-ray report. Defendants treated Plaintiff during the period after his injury for his leg complaints and responded reasonably to his complaints, including ordering an x-ray on the date the incident occurred, ordering a second x-ray within twenty-five days from the initial x-ray, prescribing pain medication and muscle relaxers before and after the second x-ray, and referring Plaintiff to an orthopaedist after receiving the second x-ray report. The care Plaintiff received from Defendants was adequate and not so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.

On this record, Plaintiff has failed to meet his burden of showing that Defendants had any subjective knowledge of a risk of serious harm due to Plaintiff's leg fracture and disregarded that risk. At most, Plaintiff's allegations indicate that Defendants were negligent in failing to diagnose his leg fracture at an earlier stage of treatment. However, such negligence is insufficient to support a deliberate indifference claim. *See, e.g., Gordon v. Lemon,* 2012 WL 4369740 (N.D. Fla. 2012) (granting summary judgment in favor of defendants on claim of deliberate indifference to serious medical need stemming from fractured shoulder despite a nineteen-day delay from date of injury to initial x-ray in light of medical treatment provided for pain during the relevant time period); *see also Nimmons v. Aviles* 409 F. App'x 295, 297-98 (11th Cir. 2011) (affirming district court's grant of

summary judgment as to claim of deliberate indifference to serious medical need); *Redd v. Conway*, 160 F. App'x 858, 860-61 (11th Cir. 2005); *compare Mandel v. Doe*, 888 F.2d 783, 788-790 (11th Cir. 1989). Thus, in light of the evidence presented, Plaintiff has not established a constitutional violation for deliberate indifference to a serious medical need. Accordingly, Defendants Roberts, Wheatley, Martinez, Douglas, Armstrong, and Pont are entitled to qualified immunity.

C.      *Statute of Limitations*

Defendant Awobuluyi asserts that Plaintiff's state law claim against him for medical malpractice/negligence is barred by the statute of limitations. Florida law provides a two-year limitation period for actions for medical malpractice. *See* Fla. Stat. § 95.11(4)(b).

Review of Plaintiff's allegations establishes that his claim for medical negligence arises out of the medical treatment and care provided by Defendant Awobuluyi. Thus, Plaintiff had two years from the date he had surgery on his leg or until October 4, 2009, at the latest, to raise a state law claim for medical negligence. Plaintiff, however, did not raise this claim until May 16, 2011. *See* Doc. No. 39. As such, from the face of the complaint, the statute of limitations has expired on Plaintiff's state law claim for medical negligence. Plaintiff has not demonstrated any legal reason why the Court should excuse his non-compliance with the applicable statute of limitations. Therefore, the Court concludes that Plaintiff's claim against Defendant Awobuluyi is subject to dismissal at this time.

Accordingly, it is **ORDERED and ADJUDGED**:

1.      Defendant Marc Awobuluyi's Motion to Dismiss (Doc. No. 129) and

Defendants Kendrick Armstrong, Bruce Douglas, Mary Martinez, Edwin Pont, Sandra Roberts, and Richard Wheatley's Motion for Summary Judgment  (Doc. No. 150) are **GRANTED**.

2.    The instant case is **DISMISSED** with prejudice as to all Defendants.

3.    The **Clerk of Court** is directed to enter judgment against Plaintiff and in favor of Defendants and to close this case.

**DONE AND ORDERED** in Orlando, Florida, this <u>3rd</u>  day of January, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-1 1/3
Gerardo Rosario
Counsel of Record